IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YVONNE CHAVEZ,

        Plaintiff,

v.                                       Civ. No. 04-253 JH/WDS

UNITED PARCEL SERVICE,

        Defendant.

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on *Defendant's Motion for Summary Judgment With Accompanying Authorities* [Doc. No. 44]. The Court has considered the arguments, authorities, and evidence provided by the parties. For the foregoing reasons, the motion for summary judgment will be granted in its entirety.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether judgment as a matter of law is appropriate, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir. 1999).

## FACTS

Unless otherwise noted, the following facts are undisputed.

Plaintiff Yvonne Chavez ("Chavez") is a former employee of Defendant United Parcel Service ("UPS"). Chavez worked as a customer counter clerk, a position that required her to greet customers, operate a cash register, complete paperwork, and lift packages from a scale or counter onto a conveyor belt. Among the essential job functions for a UPS customer counter clerk are the ability to assist in moving packages weighing up to 150 pounds, to "lift, lower, push, pull, leverage and manipulate equipment and/or packages . . . weighing up to 70 pounds" and with an average weight of 12 pounds, to perform tasks using simple hand grasping, fine hand manipulation, and reaching associated with tasks such as doing paperwork, operating the cash register, and using the telephone. While Chavez was employed as a customer counter clerk, she occasionally lifted packages weighing 70 pounds and some packages that weighed more. However, at the direction of their supervisors, Chavez and other UPS employees would often seek the assistance of co-workers in order to lift packages weighing 70 pounds.

In December of 2000, Chavez developed a condition in her right thumb and wrist that was diagnosed as carpometacarpal joint arthritis. Chavez's condition affected her ability to perform her job duties, and beginning in January of 2001 she took three months of leave from work. UPS continued to employ Chavez while she was on leave. Chavez's condition improved, and she returned to work in late April or early May of 2001. However, in December of 2001 the condition of her right thumb and wrist resurfaced, becoming progressively worse. In January of 2002, Chavez's doctor, Neil T. Chen, restricted her from lifting more than fifteen pounds, and on January 28, 2002, Chavez again took leave from work. Dr. Chen recommended that Chavez undergo surgery to repair her

carpometacarpal joint arthritis. Chavez consented, and he performed the surgery in February of 2002. According to Dr. Chen, Chavez recovered normally from the surgery. On July 12, 2002, Chavez underwent a functional capacity evaluation. Subsequently, Dr. Chen placed permanent restrictions on Chavez's physical activities. Specifically, Chavez was permitted to lift five pounds frequently and up to 40 pounds occasionally, but was not permitted to lift more than 40 pounds. In addition, Dr. Chen restricted Chavez from reaching or grasping repetitively with her right hand. In July of 2002, Dr. Chen determined that Chavez had reached maximum medical improvement and confirmed that the restrictions he had placed on her physical activities were permanent. He determined that she had a 4% impairment of her right wrist, and a 12% impairment of her right thumb.

    In late July or early August of 2002, Chavez made a request to UPS that she be permitted to return to work as a customer counter associate. Upon receiving her request, UPS requested medical information from Dr. Chen, who provided UPS with a Request for Medical Information form dated August 20, 2002. On that form, Dr. Chen indicated that Chavez was not able to perform all of the physical functions of her position as a customer counter associate. Dr. Chen again stated that Chavez could lift five pounds frequently and lift 40 pounds occasionally, up to a maximum of sixteen times per day, and that she was not permitted to do any reaching or repetitive grasping with her right hand or to push or pull heavy weights, and that these restrictions were permanent.[1] Dr. Chen was unable to identify any medications or corrective devices that would enable Chavez to perform her other job functions, but he noted that Chavez's impairment did not substantially limit her ability to perform any major life activities (such as caring for herself, performing manual tasks, walking, seeing, or hearing)

---

[1] Chavez contends that her permanent medical restrictions included an inability to reach over her shoulders. Doc. No. 50 at p. 10. However, the Court's review of the medical records reveals no such restriction.

3

other than working.

In a letter dated October 7, 2002, UPS's District Workforce Planning Manager, Jon Robertson, informed Chavez that UPS had determined that she was not eligible for a reasonable accommodation under the Americans With Disabilities Act ("ADA"). On October 29, 2002, Chavez filed a charge of discrimination with the EEOC in which she alleged that UPS discriminated against her on the basis of her age and disability. In December of 2002, a UPS Human Resource Manager named Lori Azar spoke with Chavez, advising her to return to Dr. Chen and get reevaluated so that Chavez could have her "5% impairment" removed from her record so that she could return to her regular job. Chavez interpreted this to mean that she had to be "100 percent" in order to return to work at UPS. On December 30, 2002, Chavez returned to Dr. Chen for a reevaluation of her right thumb. He performed a physical examination and found no significant change in Chavez's condition, refusing her request for a second functional capacity exam.

As of January 28, 2003, Chavez had been away from work for a period of one year. In a February 4, 2003 letter, UPS informed Chavez that she was being administratively separated from her employment effective January 28, 2003 because the company's Flexible Benefits Plan called for the administrative termination of her employment.[2] In the meantime, Chavez's position has been filled by one or more employees from a "temp" agency, as opposed to a regular UPS employee. There is no evidence in the record as to the age or identity of any such "temp" employee. In August of 2003,

---

[2] Chavez contends that a large portion of her one-year absence was attributable to a "worker's compensation issue not compensated by nor applicable to UPS' Flexible Benefits Plan," and therefore administrative separation under the Flexible Benefits Plan should have had no bearing on her employment status. However, this is merely the argument of counsel. Chavez presents no evidence on this issue, and therefore the Court will not consider it on summary judgment.

Chavez wrote letters to UPS Human Resource Manager Matt Doyle ("Doyle") in which she requested to be rehired, and in September of 2003 she submitted a written application for employment. The record does not indicate if at any time in 2003 she was applying for a particular job opening. Doyle interviewed Chavez in September of 2003 and he testified that there were "inside manual" positions available at that time. There is no evidence in the record describing the essential job functions of "inside manual" positions. According to Doyle, he did not hire Chavez because he was aware of her physical restrictions and that she could not meet the essential job functions for those positions.

On November 13, 2003, Chavez filed her complaint in the Second Judicial District Court, Bernalillo County, New Mexico. In Counts I and III of that complaint, Chavez asserts claims for age and disability discrimination in violation of the federal ADA and Age Discrimination in Employment Act ("ADEA"), as well the New Mexico Human Rights Act ("NMHRA").[3] Count II asserts an ambiguous claim for wrongful termination and unlawful hiring practices under New Mexico law.[4] On March 5, 2004, UPS removed the complaint to this federal district court. On June 1, 2005, this Court entered an order consolidating this case with *Yvonne Chavez v. United Parcel Service and Kemper Independence Ins. Co.*, Civ. No. 05-447 JB/RHS.

---

[3] The difference between the Counts I and III of the complaint is unclear. It appears that Count I applies to UPS, while Count III applies to former co-defendant Matt Doyle. However, the Court dismissed all claims against Doyle pursuant to a stipulated order filed April 12, 2004, and to that extent Count III is moot. [Doc. No. 14]. UPS appears to have interpreted Count III to apply to a later time frame than Count I. Chavez does not dispute this interpretation of the complaint.

[4] For purposes of this Memorandum Opinion and Order, the Court construes Count II to be a claim under the NMHRA or under New Mexico common law.

5

## **DISCUSSION**

### I.    FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES FOR ACTS OF ALLEGED DISCRIMINATION AFTER OCTOBER 29, 2002

UPS argues that any claims by Chavez for alleged acts of age discrimination, disability discrimination, and wrongful termination under state or federal law after October 29, 2002—the date Chavez filed her administrative charge with the EEOC for retaliation, age and disability discrimination—are barred for failure to exhaust administrative remedies. In her response brief, Chavez fails to address this argument. The Court agrees with UPS.

"The filing of a discrimination charge with either a state or federal administrative agency is a prerequisite to filing a Title VII discrimination suit in federal court." *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 n.2 (10th Cir. 1998). Federal courts do not have jurisdiction to review Title VII and ADA claims not exhausted administratively. *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1238 (10th Cir. 2004) (Title VII); *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1309 (10th Cir. 2005) (recognizing that procedural requirements of Title VII and ADA "must be construed identically"). The same holds true for age discrimination claims under the ADEA. *Shikles*, 426 F.3d at 1309 ("Because we must construe the charge filing requirements of the ADEA and Title VII consistently, to the extent that those requirements are similar, we must also construe the charge filing requirements of the ADEA and the ADA consistently."); *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004) (stating that "the ADEA and Title VII have virtually identical requirements with respect to the filing of EEOC charges"). Thus, the plaintiff's exhaustion of administrative remedies is a jurisdictional prerequisite to suit under both the ADEA, *Shikles*, 426 F.3d at 1317, and the ADA, *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir.

2005).

A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow from the charge of discrimination submitted to the EEOC. *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994), *overruled on other grounds*, *Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003). Furthermore, each discrete incident of unlawful discrimination "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez*, 347 F.3d at 1210. In light of this precedent, the Court concludes that Chavez has failed to exhaust her administrative remedies for each and every discrete incident of disability or age discrimination that occurred after October 29, 2002, and to the extent she asserts claims for any of those incidents, they will be dismissed because this Court lacks jurisdiction hear them. These include claims for age and disability discrimination arising from Chavez's administrative separation from her employment in February of 2003, as well as UPS' refusal to rehire her in 2003.

## II.  FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND TO DEMONSTRATE THE EXISTENCE OF GENUINE ISSUE OF MATERIAL FACT AS TO COUNT II

Count II of Chavez's complaint is titled "Wrongful Termination and Unlawful Hiring Practices." However, the nature of the claim purportedly asserted in Count II is unclear. Count II appears to be a state law claim, because Chavez alleges that "The State of New Mexico has enacted laws requiring employers in the state to rehire employees who have been injured on the job when the employee is medically able to perform the pre-injury job . . ." Complaint at ¶ 30. Chavez further asserts that by placing her on medical leave and refusing to rehire her, UPS "constructively and wrongfully terminated" her, *id.* at ¶ 33. As this Court previously observed in its Memorandum

7

Opinion and Order entered November 2, 2004 [Doc. No. 37], Count II is so vague that it is nearly impossible to determine what claims Chavez is attempting to assert. In her response to the motion for summary judgment Chavez makes no effort to clarify or salvage this claim. Indeed, UPS argues that it is entitled to summary judgment on this claim, and Chavez does not respond to any of its arguments. The Court concludes that, regardless of the type of claim, the result is the same: UPS is entitled to summary judgment on Count II.

First, Count II may be a claim for violation of the state worker's compensation laws, in which case Chavez should have asserted it in her action before the New Mexico Worker's Compensation Administration, which she filed prior to her complaint in this case; this Court has no jurisdiction to hear such a claim.

Second, Count II may contain a claim for the common law tort of wrongful discharge. The New Mexico law governing the tort of retaliatory discharge, also known as wrongful discharge, is well developed. New Mexico has allowed employees to recover in tort when their discharge contravenes a "clear mandate of public policy." *Vigil v. Arzola*, 102 N.M. 682, 688, 699 P.2d 613, 619 (Ct. App. 1983), *rev'd in part on other grounds by* 101 N.M. 687, 687 P.2d 1038 (1984), *overruled in part on other grounds by Chavez v. Manville Prods. Corp.*, 108 N.M. 643, 777 P.2d 371 (1989). The basic burden on the employee in such a case is to prove that he was discharged because she performed an act that public policy has authorized or would encourage or that she refused to perform an act that public policy would condemn. *Id*. at 689, 699 P.2d at 620. Later New Mexico cases have clarified the elements of the cause of action to require the employee to prove that his actions were not "merely private or proprietary," but rather were undertaken to "further the public good." *Gutierrez v. Sundancer Indian Jewelry, Inc.*, 117 N.M. 41, 48, 868 P.2d 1266, 1273 (Ct.

8

App. 1993) (citation omitted).  *See also   Garrity v. Overland Sheepskin Co. of Taos*, 1996-NMSC-032, ¶¶ 15- 16, 121 N.M. 710.  In addition, the employee must prove that the employer was aware of his protected acts and discharged him, at least in part, because of that conduct. *Weidler v. Big J Enters., Inc.*, 1998-NMCA-021, ¶¶ 25, 34-35, 124 N.M. 591; *Lihosit v. I & W, Inc*., 121 N.M. 455, 458, 913 P.2d 262, 265 (Ct. App. 1996).  In this case, the record is devoid of any evidence that Chavez performed an act that public policy encouraged or that she refused to perform an act that public policy condemned, and that UPS retaliated against her as a result.  Thus, to the extent Count II is a wrongful discharge claim, UPS is entitled to summary judgment.

Third, Count II may be a repetition of Chavez's claim for disability discrimination under the New Mexico Human Rights Act.[5]  If this is the case, then it appears to be duplicative of Counts I and III, and should be dismissed as extraneous and repetitive.

## III.     AGE DISCRIMINATION PRIOR TO OCTOBER 29, 2002

As discussed in Part I of this Memorandum Opinion and Order, as a result of Chavez's failure to exhaust administrative remedies, UPS is entitled to summary judgment on all of Chavez's age and disability discrimination claims arising from UPS's actions after October 29, 2002.  However, UPS also moves for summary judgment on Chavez's claims for age discrimination prior to that date, arguing that she cannot establish her prima facie case.  Chavez has failed to respond to his argument.

---

[5]In its motion for summary judgment [Doc. No. 44 at pp. 3-4], UPS argues that, to the extent Count II asserts a claim under the New Mexico Human Rights Act, Chavez has not exhausted her administrative remedies.  According to UPS, Chavez's failure to exhaust under Count II stems from the fact that she filed an administrative charge with the EEOC, and not with the New Mexico Human Rights Division ("NMHRD").  This argument is without merit, as it overlooks the fact that the EEOC and NMHRD have a work-sharing agreement such that one may satisfy administrative exhaustion requirements for both agencies by filing a charge of discrimination with either.  *See Sabella v. Manor Care, Inc.*, 121 N.M. 596, 598 (1996).

9

As a result of Plaintiff's failure to respond, she has confessed all facts asserted and properly supported in the summary judgment motion. *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199-1200 (10th Cir. 2002). However, Plaintiff's waiver does not relieve this Court of its duty to make the specific determinations required by Fed. R. Civ. P. 56(c). *Id*. *See also Reed v. Bennett*, 312 F.3d 1190 (10th Cir. 2002). UPS bears the burden of showing that no genuine issue of material fact exists. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). Because it does not bear the ultimate burden of persuasion at trial, however, UPS does not have to negate Chavez's claim, but may meet its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id*. at 671. Once the movant meets its initial burden, the nonmovant "must do more than refer to allegations of counsel contained in a brief to withstand summary judgment. Rather, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling Co*., 968 F.2d 1022, 1024 (10th Cir. 1992).

Under the *McDonnell Douglas* framework, a plaintiff establishes a prima facie case of age discrimination by showing that she was: 1) within a protected age group; 2) doing satisfactory work or qualified for the position; 3) discharged; and 4) replaced by a person outside the protected age group, i.e., under 40 years of age. *Branson v. Price River Coal Co.*, 853 F.2d 768, 770 (10th Cir. 1988); *EEOC v. Sperry Corp.*, 852 F.2d 503, 507 (10th Cir. 1988). Once a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the decision. *Sperry*, 852 F.2d at 507. Finally, plaintiff must rebut the employer's showing by demonstrating that the proffered justification is a pretext. *Id*.

Here, there is no dispute that Chavez satisfies the first and third elements of the prima facie

10

case. However, UPS argues that because of her lifting restrictions, Chavez was not doing satisfactory work, and that there is no evidence that she was replaced by an employee outside the protected age group.

The Court turns first to the fourth prong of the prima facie case—whether Chavez was replaced by someone under 40 years of age. A review of the record reveals that Chavez presented no significant argument on this claim. However, she did attempt to present evidence in the form of her deposition testimony [*See* Doc. No. 50 at p. 3 and Chavez Depo., UPS Ex. 1 at pp. 298-99], in which she testified that several of her former UPS co-workers informed Chavez that she had been replaced by a "temp person" who was "a younger girl." Not only is this testimony hearsay that is insufficient to create a genuine issue of fact for trial[6], but the record contains no evidence as to the identity of this person or her age, and therefore no way to determine whether she is a member of the protected age group. Because Chavez has failed to satisfy the fourth element of her prima facie case, the Court need not reach the question of whether she has satisfied the second element.

Chavez also attempts to demonstrate age discrimination by pointing to a younger UPS employee, Melissa Bray, who also had physical restrictions yet received different treatment from UPS. Typically, this type of showing of disparate treatment is reserved for the third stage of the *McDonnell Douglas* framework, in order to show that the employer's proffered non-discriminatory reason for the employment action was mere pretext for unlawful discrimination. As the Tenth Circuit has

---

[6] "Hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'" *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 485 (10th Cir. 1995) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). This principle applies with equal force to deposition testimony offered to defeat summary judgment.

11

explained, a plaintiff "may show pretext 'by providing evidence that he was treated differently from other similarly situated, nonprotected employees who violated work rules of comparable seriousness,'" provided the "similarly situated" employee shares the same supervisor, is subject to the same performance standards, and otherwise faces comparable "relevant employment circumstances." *Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005) (quoting *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1232 (10th Cir. 2000)). The evidence in the record falls short of the mark. Again, Chavez relies solely on her own deposition testimony to argue that Ms. Bray was a younger employee who had a neck injury and a lifting restriction, yet UPS transferred her to a different position and provided her with assistance in lifting packages. [Chavez Depo., UPS Ex. 1 at pp. 280-85]. However, there is no evidence as to whether Chavez and Ms. Bray suffered from the same or similar levels of impairment, if they shared the same supervisor, if their jobs had the same or similar essential functions, or if they were subject to the same performance standards. Also, it appears that Ms. Bray was a plaintiff in a class action lawsuit and subject to a consent decree, while Chavez was not. Furthermore, it appears from Chavez's deposition testimony that her information regarding UPS's treatment of Ms. Bray is based not on Chavez's own personal knowledge, but upon what Ms. Bray told her. Again, this is inadmissible hearsay. Accordingly, even if Chavez had satisfied the requirements of her prima facie case, her attempts at showing pretext would have failed. Therefore, UPS is entitled to summary judgment on Chavez's claim for age discrimination.

### IV. PLAINTIFF'S REMAINING CLAIMS OF DISABILITY DISCRIMINATION PRIOR TO OCTOBER 29, 2002

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures,

the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Merely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002). To prevail under the ADA, an employee must establish: "(1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) the employer discriminated against her because of her disability." *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000). In this case, the parties dispute whether Chavez has satisfied the first and second prongs of this test.[7]

### A. Is Chavez Disabled Within the Meaning of the Statute?

"To establish a prima facie case of discrimination under the ADA, Plaintiff must first establish that [she] is 'disabled' within the meaning of the statute." *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1239 (10th Cir. 2001). "Disability" is statutorily defined or established by showing: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Id.* (relying on 42 U.S.C. § 12102(2)) (alteration in original). A "major life activity" is a "basic activity that the average person in the general population can perform with little or no difficulty," and includes walking, standing, sitting, lifting, learning, and working. *Doyal*, 213 F.3d at 495-96 (quotation marks and citation omitted).

#### 1. Does Chavez's Physical Impairment Substantially Limit Her Ability to Work?

---

[7] UPS argues, and Chavez does not dispute, that federal law interpreting the ADA applies also to Chavez's claim for disability discrimination under the NMHRA.

In her deposition testimony, Chavez testified that she was not disabled with regard to the major life activities of caring for herself, performing manual tasks, walking, seeing, hearing, speaking, breathing, lifting, or learning. Chavez Depo., UPS Ex. 1, at pp. 205-206. She also testified that she did not consider herself disabled at any time. *Id.* at pp. 212-13, 219, 263-64, 336. This comports with Dr. Chen's assessment of Chavez's condition. UPS Ex. 10. However, in her response brief Chavez argues that her physical impairment has substantially limited her ability to perform the major life activity of working. Thus, working is the only major life activity presently at issue.[8]

In order for the impairment to be substantially limiting, the individual must be:

> (1) [u]nable to perform a major life activity that the average person in the general population can perform; or (2) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Id.* at 496 (quoting 29 C.F.R. § 1630.2(j)(1)). When the major life activity is working, however, "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The ability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). To make this determination, the court may consider:

---

[8] It does not appear that Chavez is arguing that she is substantially limited in the major life activity of lifting. This may be because the Tenth Circuit has held that a 40-pound lifting restriction is not substantially limiting on its face, and therefore a plaintiff with such a restriction must come forward with evidence comparing that restriction to the lifting ability of the general population. *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240 (10th Cir. 2001). Only in the face of such comparative evidence may the court conclude that a lifting impairment substantially limits a major life activity. *Id.* at 1241. There is no such evidence in the record here.

14

>   (A) The geographical area to which the individual has reasonable access;
>
>   (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>
>   (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Id.* § 1630.2(j)(3)(ii).

The record indicates that Chavez can no longer perform a narrow range of jobs requiring lifting more than 40 pounds and the use of her right hand for repetitive reaching or grasping. The evidence in the record does not establish that plaintiff is barred from doing any number of other retail or cashier-type jobs available to others with similar skills, training, and abilities within Chavez's geographical area. Indeed, Chavez affirmatively asserts that there is no evidence that she has ever been restricted from such duties as operating a cash register and completing paperwork. Doc. No. 50 at pp. 4-5. Thus, the Court must conclude that Chavez is not precluded from performing either an entire class of jobs or a broad range of jobs in various classes. *See Gutridge v. Clure*, 153 F.3d 898, 900-01 (8th Cir. 1998) (refusing to find plaintiff's carpel tunnel syndrome with resulting lifting restrictions substantially limiting where plaintiff could still function as a computer repair technician for employers who did not require lifting as part of the job duties); *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 373 (6th Cir. 1997) (holding that the plaintiff's carpal tunnel syndrome which precluded the performance of repetitive-motion factory work was not a substantially limiting

impairment); *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995) (holding that carpal tunnel syndrome precluding work with meat products in a cold environment would not substantially limit major life activities but only prevented the performance of a narrow range of meatpacking jobs); *see also Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 905 (10th Cir. 1997) (refusing to find that plaintiffs' nearsightedness, which prevented them from working for United as pilots, disqualified them from a "class of jobs"). "We refuse to construe the [ADA] as a handout to those who are in fact capable of working in substantially similar jobs." *Id.* (quotation omitted). Thus, Chavez is not substantially limited in her ability to work or in any other major life activity.

### 2. Did UPS Regard Chavez As Having An Impairment That Substantially Limits A Major Life Activity?

Even if she was not actually disabled, Chavez contends that UPS regarded her as disabled because its October 7, 2002 letter stated that she was ineligible for reasonable accommodation under the ADA, because UPS administratively separated Chavez from her employment after a one-year absence pursuant to the company's flexible benefits plan[9], because Lori Azar told Chavez that she needed to remove her 5% impairment from her record so that she could return to her original position as a customer counter clerk, and because it refused to either reinstate her employment as a customer counter clerk or hire her for other jobs when she applied.[10]

An individual is "regarded as" having an impairment that substantially limits a major life

---

[9] Chavez argues that this separation was improper because much of her absence was attributable to a worker's compensation issue not covered by the UPS flexible benefits plan. However, other than this bare argument, Chavez has failed to present any evidence regarding this claim or any information regarding the specific terms of the flexible benefits plan.

[10] Only two of these things, the October 7, 2002 letter and UPS' July 2002 refusal to reinstate Chavez as a customer counter clerk, took place prior to the filing of Chavez's October 29, 2002 EEOC charge.

activity if the individual is treated as if he had such an impairment, whether he does or not. *See* 29 C.F.R. § 1630.2(l); *see also Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996). A person is regarded as disabled when "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). In creating this category of disability, Congress recognized that "society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment." *Id*. (quoting *Sch. Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 284 (1987)). Because the Court has concluded that Chavez is not substantially limited in a major life activity, to survive summary judgment she must establish that a genuine factual issue exists regarding whether UPS (1) mistakenly perceived her as being impaired, and (2) mistakenly believed the perceived impairment substantially limited at least one major life activity. *Lanman v. Johnson County, Kan.*, 393 F.3d 1151, 1156-57 (10th Cir. 2004). There is no indication in the record whatsoever that UPS believed that Chavez was substantially limited in any major life activity, with the possible exceptions of working. An employee is perceived as substantially limited in working when the employer believes the employee "is unable to perform either a class of jobs or a broad range of jobs in various classes." *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1133 (10th Cir. 2003). *See also Sutton*, 527 U.S. at 491-92, 119 S.Ct. 2139. However, as emphasized in *Sutton*, *Lanman*, and other cases, that belief must be mistaken.

In this case, viewing the evidence in the light most favorable to Chavez, the Court concludes that UPS did not "regard" Chavez as disabled under the law of this circuit. As the Tenth Circuit

Court of Appeals has instructed:

> Defendant's belief that Plaintiff could no longer perform a job that required lifting in excess of Plaintiff's capabilities does not mean that Defendant regarded Plaintiff as disabled. *See Thompson [v. Holy Family Hosp.*, 121 F.3d 537, 541 (9th Cir. 1997) ("Even if [defendant] believed that [plaintiff] was incapable of lifting 25 pounds, it does not follow that [defendant] regarded her as disabled."). Where the recognition of Plaintiff's limitations is not an erroneous perception, but is instead a recognition of fact, a finding that Plaintiff was regarded as disabled is inappropriate.

*Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1241 (10th Cir. 2001). Thus, where the evidence demonstrates that a defendant has acknowledged a plaintiff's lifting restriction and treated her accordingly, and there is no evidence that the defendant misperceived the extent of the limitation or based that misperception on speculation, stereotype, or myth, then there is insufficient evidence that defendant regarded her as disabled. *Id*. at 1242. *Accord Rakity v. Dillon Companies, Inc.*, 302 F.3d 1152, 1162-63 (10th Cir. 2002) (finding that employer did not regard plaintiff as disabled where its belief that his ability to lift was impaired was based upon medical and employment records, not speculation, stereotype, or myth). Here, there is no evidence in the record to shows that UPS regarded Chavez as having anything other than a 40-pound lifting restriction and a limitation on repetitive reaching and grasping with her right hand—the limitations that are well documented in the medical records. Chavez points to UPS's failure to rehire her in any position, whether as a customer counter clerk or in another capacity. But Chavez points to no evidence regarding what other jobs were available and what their essential functions were. Without such evidence, it is impossible to conclude that Chavez was qualified for those jobs or that UPS had an inaccurate perception of her ability to perform the essential job functions. Furthermore, the evidence does not demonstrate that UPS perceived that Chavez's impairment substantially limited her in at least one major life activity.

18

*Lanman*, 393 F.3d at 1157.  Lori Azar's statement to Chavez that she could return to work as a customer counter clerk if her doctor removed the 5% impairment on her medical records may demonstrate UPS's belief that Chavez was unable to do that particular job, but it does not show that it believed her to be unable to perform a whole class or broad range of jobs.

As the United States Supreme Court has observed, an employer "is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job." *Sutton*, 527 U.S. at 490-91, 119 S.Ct. 2139.  Under this rule, Chavez can only survive summary judgment if she presents triable evidence indicating UPS regarded her as substantially limited in one or more of her affected major life activities of performing lifting, reaching, or working.  Because of the absence of such evidence, the Court concludes that UPS did not regard Chavez as disabled.

### B.     Is Chavez Qualified, With or Without Reasonable Accommodation, To Perform the Essential Functions of Her Job?

Because the Court has concluded that Chavez does not have a physical or mental impairment that substantially limits one or more major life activities and has not been regarded as having such an impairment, Chavez is unable to meet the first prong of her prima facie case under the ADA.  As a result, the Court need not reach the second prong, which is whether Chavez is qualified, with or without reasonable accommodation, to perform the essential functions of the job.

**IT IS THEREFORE ORDERED** that *Defendant's Motion for Summary Judgment With Accompanying Authorities* [Doc. No. 44] is **GRANTED**, and Defendant UPS is entitled to summary judgment on all of the claims in Plaintiff's complaint.

_____
**UNITED STATES DISTRICT JUDGE**